1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    KRZYSZTOF F. WOLINSKI,                   No.  2:19-CV-2037-DAD-DMC-P

12              Plaintiff,

13        v.                                   ORDER

14    LAUREN ELDRIDGE, et al.,                 And

15              Defendants.                    FINDINGS AND RECOMMENDATIONS

16

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983.  Pending before the Court is Plaintiff's third amended complaint.  See ECF No.

19    82.

20          The Court is required to screen complaints brought by prisoners seeking relief

21    against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C.

22    § 1915A(a).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or

23    malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

24    from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover,

25    the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain

26    statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This

27    means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d

28    1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the

1    complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

2    rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege

3    with at least some degree of particularity overt acts by specific defendants which support the

4    claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is

5    impossible for the Court to conduct the screening required by law when the allegations are vague

6    and conclusory.

7

8                              **I.  PLAINTIFF'S ALLEGATIONS**

9                Plaintiff filed his third amended complaint on February 27, 2025. See ECF No. 82.

10   Plaintiff names the following prison officials at the California Health Care Facility (CHCF) in

11   Stockton as defendants: (1) Laura Eldridge; (2) M. Navarro; (3) K. Mim; (4) P. Linehan; (5) R.

12   Nava; (6) N. Lucca; (7) Z. Barraza; (8) S. De Jesus; (9) S. Richardson; (10) G. Gill; (11) D.

13   Harms; and (12) C. Tennis. See id. at 2-5.

14                Plaintiff alleges a violation of his First, Eighth, and Fourteenth Amendment rights.

15   See id. at 5. Plaintiff contends that on or about May 26, 2018, while incarcerated at CHFC,

16   Plaintiff was the victim of a retaliatory assault by Defendant Harms. See id. at 6. Plaintiff asserts

17   that Defendant Harms attacked Plaintiff in retaliation for reporting that Defendant Harms stole

18   Plaintiff's personal property. See id. The assault was allegedly recorded on the prison's

19   surveillance system and observed by multiple inmates and nursing staff. See id. According to

20   Plaintiff, Lieutenant Banks confirmed Defendant Harms' misconduct and acknowledged a pattern

21   of assaults on disabled ADA inmates at CHCF. See id. To conceal his unlawful behavior,

22   Defendant Harms allegedly falsified a Rules Violation Report (RVR), No. 5083831, accusing

23   Plaintiff of assault on a peace officer. See id. Plaintiff contends there was "no penological

24   justification" for Defendant Harms' assault on Plaintiff and that the falsified RVR was a

25   retaliatory misuse of authority. Id. Plaintiff asserts that, due to discipline based on this fabricated

26   report, Plaintiff lost good-time credits and faced other sanctions. See id.

27   / / /

28   / / /

                                          2

1           Plaintiff contends that on or about June 14, 2018, Defendant Linehan entered

2    Plaintiff's cell and informed him that Plaintiff had been found guilty of the charged RVR, without

3    any hearing, which is required by CDCR regulations and the due process protections outlined in

4    Wolff v. McDonnell, 418 U.S. 539 (1974). See id. Plaintiff claims that he was denied the

5    opportunity to call witnesses, present mitigating evidence, or review the surveillance footage

6    evidence that would prove his innocence. See id.

7           The Plaintiff filed several grievances related to the incident, including CHCF-C-

8    18-02706 and CHCF-C-18-02081. See id. However, Plaintiff asserts that Defendants De Jesus

9    and Richardson, in their role as Grievance Coordinators, suppressed these complaints to shield

10    officers and prevent Plaintiff from exhausting his administrative remedies, thus blocking

11    Plaintiff's ability to pursue judicial review. See id. Plaintiff further alleges that the Chief Deputy

12    Warden, Defendant Eldridge, was aware of the staff misconduct and the suppression of

13    grievances but intentionally chose not to act. See id. at 7. Instead, Plaintiff asserts Defendant

14    Eldridge participated in a "code of silence," acquiescing to the constitutional violations and even

15    dismissively saying to Plaintiff "'sue me.'" Id.

16           As a result of the Defendants' misconduct and conspiracy, Plaintiff claims he lost

17    good-time credits, was denied educational opportunities, faced wrongful disciplinary actions, and

18    was deprived of access to prison programs. See id. Plaintiff also states that he experienced

19    emotional distress, PTSD, pain, and fear caused by these retaliatory and abusive acts. See id.

20           Plaintiff alleges that on January 26, 2019, he was subject to deliberate, malicious

21    retaliation, and abuse of authority at the CHCF. See id. at 8. Plaintiff contends that Defendant

22    Gill, a Registered Nurse, conspired with Defendant Lucca, to fabricate a false RVR, No.

23    6396046, accusing Plaintiff of assault on staff. See id. at 9. Plaintiff asserts that this forged report

24    was filed in retaliation for Plaintiff's complaints to Defendant Gill's supervisor that Defendant

25    Gill routinely abandoned her post for hours at a time due to a relationship with another staff

26    member, depriving Plaintiff of medical care and treatment. See id.

27    / / /

28    / / /

3

1    Plaintiff contends that on January 26, 2019, Plaintiff, who is mobility impaired,

2    requested clean linens after a medical mishap. See id. When staff allegedly refused Plaintiff's

3    request for hours, Plaintiff insisted on speaking with a supervisor. See id. According to Plaintiff,

4    instead of resolving the matter informally, unit staff ordered Plaintiff to strip in the dayroom and

5    place Plaintiff's dirty linens onto the floor. See id. Plaintiff claims that when Plaintiff complied,

6    Defendant Gill triggered an alarm and falsely claimed Plaintiff assaulted her with Plaintiff's T-

7    shirt. See id. Plaintiff further asserts that when Defendant Lucca responded to the alarm, he

8    refused to review the surveillance video that would have exonerated Plaintiff and instead co-

9    authored the false RVR. See id.

10   As a result of the alleged assault, Plaintiff was removed from the medical care unit

11   and placed in Administrative Segregation (RHU), where Plaintiff remained for several months.

12   See id. Plaintiff alleges that while placed in segregation, Plaintiff "lost irreplaceable property,"

13   stolen by staff in retaliation for Plaintiff's complaint. Id. Plaintiff further asserts that Defendant

14   Eldridge was placed on notice of the falsification and staff misconduct. See id. Plaintiff contends

15   Defendant Eldridge again deliberately refused to act, participating in a "code of silence" that

16   suppressed grievances and complaints. Id.

17   Plaintiff asserts that his due process rights were violated when Defendant Nava

18   conducted a disciplinary hearing lasting less than three minutes.[1] See id. at 9-10. According to

19   Plaintiff, Defendant Nava denied Plaintiff the right to call witnesses, present evidence, or have

20   exculpatory video recordings reviewed, thereby upholding the forged RVR without due process.

21   See id. at 10. Plaintiff states that only after intervention by the Office of the Inspector General

22   (OIG) and CDCR's Office of Internal Affairs was Plaintiff released from RHU and cleared of the

23   false charges. See id.  However, Plaintiff contends that the fraudulent RVR remains in Plaintiff's

24   file and therefore, Plaintiff continues to be deprived of programs, privileges, and opportunities.

25   See id. As a result of Defendants' retaliatory actions, Plaintiff alleges he has suffered the loss of

26

27   [1] While Plaintiff does not explicitly state which RVR this hearing addressed, Plaintiff makes this
     allegation after discussing RVR No. 6396046, and therefore the Court assumes the hearing was
28   for RVR No. 6396046.

1   personal property (including a radio boombox and JVC headphones), loss of good-time credits,

2   denial of programs, severe emotional distress, PTSD, and pain. See id. at 8 and 10.

3          Next, Plaintiff claims that his First, Eighth, and Fourteenth Amendment rights

4   were violated. See id. at 10-11. Plaintiff alleges that from March 2018 through December 2021,

5   the CHCF Grievances Office and its coordinators, Defendants De Jesus and Richardson,

6   systematically and intentionally refused to process more than 25 grievances that Plaintiff

7   submitted regarding staff misconduct, forged retaliatory RVRs, and other constitutional

8   violations. See id. at 11-12. From 2021 through December 2023, Plaintiff allegedly submitted at

9   least 15 additional grievances that were suppressed by "CHCF grievance coordinators, [2]"

10  particularly those involving staff complaints. See id. at 12. Plaintiff claims that this pattern was

11  part of retaliation against Plaintiff for filing grievances and exercising Plaintiff's right to petition

12  for redress. See id.

13         Plaintiff claims that if Plaintiff filed complaints in state court, Plaintiff faced

14  further retaliation from CHCF staff and officers, including threats intended to discourage Plaintiff

15  from pursuing litigation. See id. In addition to those threats, Plaintiff alleges he was denied access

16  to rehabilitative programs, college enrollment, and "denied endorsement into CHCF" despite

17  being classified as an inmate with serious medical needs. Id. Plaintiff claims these denials were

18  retaliatory acts intended to punish him for pursuing grievances and litigation. See id.

19         Between October 2, 2023, and December 28, 2023, Plaintiff claims the retaliation

20  intensified. See id. During this period, Plaintiff asserts that he was subjected to "retaliatory

21  placement in RHU and a retaliatory transfer to C.M.F. [California Medical Facility] Vacaville,"

22  and Plaintiff's legal work product and papers were confiscated, all of which interfered with

23  Plaintiff's ability to pursue litigation. Id. Plaintiff also claims that "CHF C.C.II A. Chavez," who

24  is not named as a defendant, continues to issue threats on behalf of the named defendants in an

25  ongoing attempt to suppress Plaintiff's grievances and prevent the exhaustion of remedies. Id.

26  _____

    [2]    Plaintiff did not refer to Defendants De Jesus and Richardson by name in this allegation
27  but because Plaintiff previously identified Defendants De Jesus and Richardson as the grievance
    coordinators, the Court assumes Plaintiff asserts this claim against Defendants De Jesus and
28  Richardson.

Plaintiff alleges that on March 16, 2020, Plaintiff was subjected to retaliation and constitutional deprivations after reporting sexual harassment by Officer R. Wall, who is not named as a defendant. See id. at 13. Plaintiff contends that following Plaintiff's report, Officer Wall engaged in retribution by forging "RVR-115 No. 6979795," falsely charging Plaintiff to justify misconduct and silence Plaintiff's protected speech. See id. at 14. Despite the existence of video evidence corroborating Plaintiff's account, Plaintiff claims Defendant Eldridge again failed to implement any remedy and continued to uphold the "code of silence." Id. Plaintiff asserts that this deliberate refusal violated CDCR regulations and constituted supervisory acquiescence in unlawful conduct, as prohibited under established precedent. See id. Plaintiff claims that the misconduct of Officer Wall includes using prison computers to watch pornography instead of performing duties, along with theft of Plaintiff's personal property, as recorded on the surveillance system. See id.

Plaintiff contends that Defendant Navarro, who was present when Plaintiff initially reported Wall's sexual harassment and theft, later conducted a five-minute hearing on the forged RVR, No. 6979795. See id. at 15. Plaintiff asserts that Defendant Navarro's actions denied Plaintiff all due process protections guaranteed by the Fourteenth Amendment. See id. Plaintiff further asserts that supervisory liability attaches to Defendant Eldridge for her failure to investigate or correct the misconduct. See id. Despite Plaintiff's efforts to seek redress through OIG intervention, Plaintiff asserts that the forged RVR was only reheard, not dismissed, and Plaintiff was found guilty, again denying Plaintiff of his right to due process. See id.

Plaintiff contends he suffered "continuous infliction of retaliation and deprivation of his Constitutional Rights and Due Process of Law and Equal Protections by [Defendant] Barraza, and [Defendant] Eldridge." See id. at 17. Plaintiff additionally asserts that he was "deliberately victimized by the CHCF Lieutenants' Culture of Malicious Abuse of Authority and Power." Id. Plaintiff asserts these actions were taken to punish him for filing grievances, reporting staff misconduct, and exposing conspiracies involving staff and other inmates. See id.

/ / /

/ / /

6

1          Plaintiff alleges that on or about July 2019, after reporting that two inmates had

2  conspired to stab a prison doctor, Defendant Barraza retaliated against Plaintiff by issuing a

3  "forged RVR" (No. CHCF-6878869). Id. at 18. Plaintiff states that Defendant Barraza is

4  responsible for conducting unbiased RVR investigations but instead, Defendant Barraza retaliated

5  by forging the RVR. Id. at 4. Plaintiff claims that this RVR was filed before Plaintiff was

6  interviewed, and Defendant Mim later conducted a two-minute RVR hearing where Plaintiff was

7  denied the opportunity to call witnesses or present exculpatory evidence. See id. at 18. Plaintiff

8  asserts that he was found guilty, placed on "C" status, and Plaintiff's personal property (including

9  a boombox radio and television) was confiscated and damaged. See id. Plaintiff contends this

10  punishment served no legitimate penological goal but was instead designed to chill Plaintiff's

11  exercise of protected rights. See id.

12          Plaintiff further alleges that this pattern of retaliation was consistent with a culture

13  of "weaponizing" forged RVRs at CHCF, where officers fabricated charges against inmates who

14  reported misconduct. See id. at 19. Plaintiff asserts that Defendant Eldridge's deliberate

15  indifference and failure to supervise or correct misconduct make her liable under established

16  supervisory liability principles. Id.

17          Additionally, Plaintiff contends that in March of 2018, at Salinas Valley State

18  Prison (SVSP), Lt. Roger Martinez, who is not named as a defendant, conspired to silence

19  Plaintiff after Plaintiff reported obstruction of court access and misconduct by staff. See id. at 19.

20  Plaintiff claims Martinez solicited an inmate clerk to draft a false note alleging threats against a

21  doctor, which was used to place Plaintiff in Administrative Segregation and transfer Plaintiff to

22  CHCF in an effort "to mute investigation against Lt. R. Martinez," other officers and the facility.

23  Id. According to Plaintiff, although handwriting evidence disproved Plaintiff's authorship of the

24  note, Plaintiff was issued another allegedly forged RVR (No. 4626631). See id. at 20. Once at

25  CHCF, Defendant Linehan allegedly upheld the false charges without a hearing and informed

26  Plaintiff that Plaintiff was found guilty. See id.

27  / / /

28  / / /

1              Plaintiff asserts that Defendants' pattern of deliberate and retaliatory abuse

2  violated Plaintiff's rights under the First, Eighth, and Fourteenth Amendments to the United

3  States Constitution. See id. at 21. According to Plaintiff, retaliation began after Plaintiff filed

4  allegations of battery assault by Defendant Harms. See id. at 22. Shortly thereafter, Plaintiff was

5  moved to Unit C-2B, where Plaintiff came under the supervision of Defendant Tennis, a

6  corrections officer. See id. Within 24 hours of his transfer, Plaintiff claims that Defendant Tennis

7  confronted Plaintiff, demanding that Plaintiff withdraw Plaintiff's allegations against Defendant

8  Harms. See id. When Plaintiff refused, Defendant Tennis threatened Plaintiff to "watch his back."

9  Id. Plaintiff claims that, in response to these threats and ongoing mistreatment, Plaintiff initiated a

10  hunger strike to protest the abuse, during which he was closely monitored by staff for medical

11  reasons. See id. at 22-23.

12             Plaintiff alleges that Defendant Tennis escalated her retaliation by filing false and

13  fabricated reports, including a false claim that Plaintiff was caught eating peanut butter, despite

14  medical records confirming Plaintiff's severe allergy to peanuts. See id. at 23. Plaintiff contends

15  that this falsified report was intended to discredit and punish Plaintiff for exercising Plaintiff's

16  right to file complaints. See id. Plaintiff argues that, when the falsity of the report was exposed,

17  Defendant Tennis allegedly retaliated further by destroying Plaintiff's Durable Medical

18  Equipment, including Plaintiff's oxygen concentrator valued at over $4,000, his air mattress, and

19  orthopedic braces. See id. Plaintiff claims that Defendant Tennis told Plaintiff, "'You just f..k

20  with the wrong c/o, you will die before this investigation is completed.'" Id.

21             Plaintiff further alleges that Defendant Tennis subjected Plaintiff to degrading

22  treatment by ordering an unjustified cross-gender strip search and forcing Plaintiff to sit naked on

23  a plastic chair in the dayroom for over 40 minutes, without penological justification. See id.

24  Plaintiff asserts this was done to humiliate and to retaliate for Plaintiff's refusal to withdraw

25  complaints and Plaintiff's pursuit of a hunger strike. See id. According to Plaintiff, after another

26  staff member intervened to say Plaintiff did not eat the peanut butter, Defendant Tennis replied

27  "'I don't give a f..k he will learn not to mess with me.'" Id. Plaintiff contends that Defendant

28  Linehan knowingly allowed the retaliatory disciplinary process to move forward without

1    affording Plaintiff's due process rights. See id. at 24. Plaintiff alleges that he "suffered systematic

2    deliberate deprivation of rights and denial of remedy," designed solely to chill Plaintiff's exercise

3    of constitutional rights. Id. Plaintiff claims physical injury, emotional distress, property loss, and

4    ongoing fear of staff reprisals. See id.

5

6                                    **II.  DISCUSSION**

7            The Court previously screened Plaintiff's second amended complaint. See ECF

8    No. 58. There, the Court found a number of cognizable claims and dismissed Plaintiff's

9    supervisory liability claim against Defendant Eldridge and his Eighth Amendment claim against

10   Defendant Tennis with leave to amend. See id. at pgs. 6-8.

11           In his third amended complaint, the Court finds the following cognizable

12   retaliation claims against: Defendants Lucca and Gill as to RVR No. 6396046; Defendants De

13   Jesus and Richardson as to their alleged suppression of Plaintiff's grievances filed from March

14   2018 through December 2021; Defendant Harms as to RVR No. 5083831; Defendant Tennis as to

15   the filing of grievances, alleged destruction Plaintiff's medical and personal property, and

16   falsifying reports; and Defendant Barraza as to forged RVR. The Court finds the following due

17   process claims against: Defendant Nava as to RVR No. 6396046; Defendant Navarro as to RVR

18   No. 6979795; Defendant Mim as to the RVR hearing process; Defendant Linehan as to the June

19   14, 2018, determination that Plaintiff was found guilty of an RVR; and Defendants De Jesus and

20   Richardson as to suppression of Plaintiff's grievances. The Court also finds Plaintiff asserts a

21   cognizable  excessive force claim against Defendant Harms as to alleged battery assault.

22           As described in detail below, Plaintiff cured the previously identified deficiency

23   and now states a cognizable supervisory liability claim against Defendant Eldridge as to her

24   participation in allegedly suppressing Plaintiff's grievances. However, Plaintiff did not remedy

25   the previously identified deficiency as to the excessive force claim against Defendant Tennis.

26   Instead, the facts provided as to this claim give rise to a First Amendment Retaliation claim. The

27   undersigned will recommend this action proceed on the cognizable claims Plaintiff presented in

28   the third amended complaint.

                                              9

1          **A.      Supervisory Liability Claim**

2                    Supervisory personnel are generally not liable under § 1983 for the actions of their

3     employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

4     respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

5     violations of subordinates if the supervisor participated in or directed the violations.  See id.

6                    Supervisory personnel who implement a policy so deficient that the policy itself is

7     a repudiation of constitutional rights and the moving force behind a constitutional violation may

8     be liable even where such personnel do not overtly participate in the offensive act.  See Redman

9     v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).  A supervisory defendant

10    may also be liable where he or she knew of constitutional violations but failed to act to prevent

11    them.  See Taylor, 880 F.2d at 1045; see also Starr v. Baca, 633 F.3d 1191, 1209 (9th Cir. 2011).

12                   When a defendant holds a supervisory position, the causal link between such

13    defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v.

14    Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.

15    1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in

16    civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th

17    Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the

18    official's own individual actions, has violated the constitution."  See Ashcroft v. Iqbal, 556 U.S.

19    662, 676 (2009).

20                   Previously, Plaintiff's supervisory liability claim against Eldridge was dismissed

21    because he had not alleged that Defendant Eldgridge personally participated in Plaintiff's alleged

22    constitutional deprivation. See ECF No. 58, pgs. 6-7. In the third amended complaint, Plaintiff

23    asserts that Eldridge repeatedly refused to act despite notice of specific misconduct and

24    suppressed grievances, acquiesced in a "code of silence," and told Plaintiff "sue me." Thus,

25    Plaintiff has cured the prior deficiency, and this Court now finds a cognizable supervisory

26    liability claim against Defendant Eldridge as to failure to prevent ongoing retaliation despite

27    knowledge of such retaliation. Therefore, the undersigned will recommend that this claim

28    proceed.

1          **B.      Excessive Force Claim Against Defendant Tennis**

2                  The treatment a prisoner receives in prison and the conditions under which the

3      prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

4      and unusual punishment.   See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

5      511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

6      of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102

7      (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

8      Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

9      "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy,

10     801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when

11     two requirements are met: (1) objectively, the official's act or omission must be so serious such

12     that it results in the denial of the minimal civilized measure of life's necessities; and (2)

13     subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

14     inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

15     official must have a "sufficiently culpable mind."  See id.

16                 When prison officials stand accused of using excessive force, the core judicial

17     inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline,

18     or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992);

19     Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The "malicious and sadistic" standard, as

20     opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims,

21     is applied to excessive force claims because prison officials generally do not have time to reflect

22     on their actions in the face of risk of injury to inmates or prison employees.  See Whitley, 475

23     U.S. at 320-21.  In determining whether force was excessive, the court considers the following

24     factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship

25     between the need for force and the amount of force used; (4) the nature of the threat reasonably

26     perceived by prison officers; and (5) efforts made to temper the severity of a forceful response.

27     See Hudson, 503 U.S. at 7.  The absence of an emergency situation is probative of whether force

28     was applied maliciously or sadistically.  See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir.

11

1   1993) (en banc).  The lack of injuries is also probative.  See Hudson, 503 U.S. at 7-9.  Finally,

2   because the use of force relates to the prison's legitimate penological interest in maintaining

3   security and order, the court must be deferential to the conduct of prison officials.  See Whitley,

4   475 U.S. at 321-22.

5           Plaintiff was informed that he failed to provide facts to show that Defendant

6   Tennis physically injured Plaintiff, and therefore Plaintiff's excessive force claim against

7   Defendant Tennis was not cognizable. See ECF No. 58, pgs. 7-8. Plaintiff's third amended

8   complaint alleges that Defendant Tennis destroyed medical equipment essential to respond to

9   Plaintiff's disability, ordered a humiliating cross-gender strip search without penological

10  justification, and threatened Plaintiff's life in response to grievances Plaintiff filed. See ECF No.

11  82, pgs. 23-24. Plaintiff did not remedy the deficiency previously identified as to an excessive

12  force claim. However, the facts are sufficient for a cognizable First Amendment claim. Thus, the

13  undersigned will recommend this claim proceed as a First Amendment Retaliation claim.

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

### III. CONCLUSION

2      Based on the foregoing, the undersigned orders and recommends as follows:

3      1.    It is ORDERED that Plaintiff's third amended complaint, ECF No. 82, is

4  deemed timely.

5      2.    It is RECOMMENDED that this action proceed on Plaintiff's third

6  amended complaint, ECF No. 82, as to the cognizable claims identified herein and as follows:

7          Retaliation claims against: Defendants Lucca and Gill as to RVR No.
8          6396046; Defendants De Jesus and Richardson as to their alleged suppression of
           Plaintiff's grievances filed from March 2018 through December 2021; Defendant
9          Harms as to RVR No. 5083831; Defendant Tennis as to the filing of grievances,
           alleged destruction Plaintiff's medical and personal property, and falsifying
10         reports; Defendant Barraza as to forged RVR; and Defendant Eldridge's
           supervisory liability as to failure to prevent ongoing retaliation despite knowledge
11         of such retaliation.

12         Due process claims against: Defendant Nava as to RVR No. 6396046;
           Defendant Navarro as to RVR No. 6979795; Defendant Mim as to the RVR
13         hearing process; Defendant Linehan as to the June 14, 2018, determination that
           Plaintiff was found guilty of an RVR; and Defendants De Jesus and Richardson as
14         to suppression of Plaintiff's grievances.

15         Excessive force claim against Defendant Harms as to alleged battery
           assault.

16     3.    It is RECOMMENDED that all other claims be dismissed.

17     These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

19  after being served with these findings and recommendations, any party may file written

20  objections with the court.  Responses to objections shall be filed within 14 days after service of

21  objections.  Failure to file objections within the specified time may waive the right to appeal.  See

22  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23

24  Dated:  October 14, 2025

25                                                    _____
                                                      DENNIS M. COTA
26                                                    UNITED STATES MAGISTRATE JUDGE

27

28

13